## The New York, New Haven and Hartford Railroad Company *vs.* The First National Bank of Bridgeport et als. (Barber Milling Company).

Third Judicial District, Bridgeport, April Term, 1926.

Wheeler, C. J., Curtis, Maltbie, Haines and Hinman, Js.

The present case arose out of the shipment of four carloads of flour from a milling company in Minnesota to a grain dealer in Bridgeport, and resembled, in all essential particulars including the bankruptcy of the consignee and the conflicting claims of the shipper and the bank, the facts found in the case of the *New York, N. H. & H. R. Co.* v. *The First National Bank of Bridgeport et als. (Goodhue Mill Company), ante,* page 33, except that the drafts were made payable "thirty days after arrival" instead of "thirty days after arrival of car," and the accompanying instructions, containing no reference to the arrival of the car, directed the bank to "deliver bill of lading only upon acceptance of draft; advise us date due." As in the *Goodhue* case, the bank followed a local custom and usage of treating the acceptances of the .drafts as establishing their due dates without reference to the arrival of the cars, and surrendered the bills of lading upon acceptance. *Held* that the trial court was correct in concluding that the drafts were payable thirty days after acceptance, and that the bank was under no duty to investigate the arrival of the cars before releasing the bills of lading; and that, furthermore, even if the description of the car contained in each bill of lading was read by construction into the draft accompanying it, as claimed by the shipper, these conclusions would stand under the principles announced in the *Goodhue* case.

Argued April 21st—decided July 30th, 1926.

ACTION of interpleader to determine the title to certain carloads of flour, in the possession of the plaintiff, brought to the Superior Court in Fairfield County; the court, *Banks, J.,* rendered an interlocutory judgment of interpleader, after which the defendants filed their respective claims and the issues were tried to the court, *Booth, J.;* judgment rendered

for the defendant The First National Bank of Bridgeport, from which the receivers of the Barber Milling Company, substituted for the Company as defendants, appealed. *No error.*

This action concerns the ownership of four carloads of flour, in the possession of the plaintiff, which flour was shipped by the defendant the Barber Milling Company, a corporation located in Minneapolis, Minnesota, and engaged in the manufacture and sale of flour, to the National Grain Corporation, a wholesale grain and produce dealer in Bridgeport. The first of these carloads was shipped from Minneapolis, consigned to the Grain Corporation, on October 29th, 1923; the Milling Company, on the same day, drew its draft upon the Grain Corporation for $1,496.65, the purchase price, made payable "thirty days after arrival," attached thereto a standard negotiable bill of lading, and, through the Northwestern National Bank of Minneapolis, forwarded the draft and bill of lading to The First National Bank of Bridgeport, accompanied by written and printed instructions to "Deliver bill of lading only upon acceptance of draft; advise us date due. Hold draft for payment." These documents were received by the Bridgeport bank on or about November 9th; immediately upon receipt thereof the Grain Corporation was notified that they were held by the bank, and the Grain Corporation accepted the draft and received the bill of lading. On the same day the bank loaned the Grain Corporation $1,462.50, and received from it, as security for the note, an assignment of the bill of lading. The car covered by the bill of lading did not arrive in Bridgeport until November 19th.

The second carload was shipped and draft and bill of lading forwarded on November 1st, 1923; the docu-

ments were received by the bank on or about November 13th, on which date the draft was accepted and bill of lading surrendered. On November 19th the Grain Corporation assigned the bill of lading to the bank as part security for a loan made on that date. The car arrived on November 19th.

The date of shipment of the third carload and of draft and bill of lading covering it was November 6th; the documents were received on or about November 16th, notification given and draft accepted and bill of lading surrendered November 16th, and the bill of lading assigned to the bank November 17th as part security for a loan made that day. The car arrived November 27th.

The fourth and last shipment was made November 7th, the draft and bill of lading were forwarded the same day, received on or about November 17th, on which date the draft was accepted and the bill of lading assigned to the bank as part security for a loan made on that day. The car arrived November 27th. The further facts found and above stated as to the first mentioned carload were also found as to the remaining three.

As to each, the court finds that the Bridgeport Bank made the loan and received the bill of lading as collateral security "in the regular course of business, and in good faith, without notice of any other claim of ownership or right, title, or interest therein."

The finding states, further, that on the days when the drafts were accepted, prior thereto and for some time thereafter, the bank held other notes of the Grain Corporation, some of which, during November, were paid at maturity and others before maturity, and during this period the bank also discounted other notes of the Grain Corporation. At the time each draft was accepted the bank made no effort to learn whether the

car had arrived in Bridgeport, but by the custom and practice in banking in Bridgeport the acceptance of a draft payable thirty days after arrival established the due date thereof as thirty days from date of acceptance. As to each of the drafts in question the due date was entered as thirty days after the date of acceptance and the forwarding (Minneapolis) bank was immediately notified of such maturity. On November 22d proceedings in bankruptcy were instituted against the Grain Corporation, and subsequently thereto but before adjudication in bankruptcy, the Milling Company attempted to stop delivery of the cars, in the exercise of its claimed right of stoppage *in transitu*. The bank still holds, unpaid, the notes to secure which the several bills of lading were assigned, and holds the bills of lading as security therefor.

Upon the facts found the court reached the conclusions that the drafts were to be paid thirty days after acceptance; that the Bridgeport bank owed no duty to the Milling Company to ascertain whether the cars had arrived before permitting acceptance of the drafts; that the receivers of the Milling Company have no right, title or interest in the flour, but that the same is the property of the Bridgeport bank.

*Joseph G. Shapiro*, with whom, on the brief, were *Harry Allison Goldstein* and *Charles S. Brody*, for the appellants (the defendant receivers of the Barber Milling Company.)

*William H. Comley*, for the appellee (the defendant The First National Bank of Bridgeport).

HINMAN, J. The appellant first attempted to correct the finding under General Statutes, §§ 5829, 5830, and 5831, and later changed to the method provided in § 5832, but as the latter statute and the rules are sub-

stantially complied with, we consider such of the claimed additions as were not granted by the trial court upon the motion to correct originally filed and do not already sufficiently appear in the finding as made. Six paragraphs of the draft-finding which the appellant seeks to have inserted are to the effect that each of the four drafts were intended by the shipper, known and recognized by the Bridgeport Bank, and were, in fact, to be payable thirty days after arrival of the car covered thereby. The intent of the shipper is immaterial except as it is expressed by the draft and accompanying papers, the knowledge of such intent by the bank is disputed, and the actual maturity depends upon other facts, as to which the court has found adversely to this claim. It is also sought to add a statement that neither the Milling Company nor the forwarding bank had notice or information or was aware that each of the drafts had been permitted to be accepted and the bill of lading surrendered before arrival of the car to which they were related. These are not only not undisputed facts, but are inconsistent with the trial court's finding as to the meaning of the drafts, and there is, in the testimony of witnesses called by the appellant and in the chronology of the several transactions, sufficient significance to cast serious doubt upon the claimed ignorance of the Milling Company and the forwarding bank as to the practice followed by the Bridgeport bank regarding the acceptance of these drafts. That paragraph (45) which finds the custom of Bridgeport banks as to due date of drafts payable thirty days after arrival, is attacked, but it is supported by the practically uncontroverted testimony of three bank officials and consequently must stand.

The facts, as found, which are material to a determination of this appeal are for the most part not essentially different from those in the case of the *New York,*

*New Haven and Hartford Railroad Company* v. *First National Bank et als.* (*Goodhue Mill Company*), ante, page 33, which was tried with this and another case and the appeal in which is decided this day. The principal difference is that here each draft contained no mention of a car, nor did the instructions, as in the *Goodhue* case, specifically indicate that "arrival" referred to arrival of car. The trial court, in consequence, considered, as is indicated in the memorandum of decision, that the designation of the due date as "thirty days after arrival," might and should be construed as referring to arrival of the draft instead of arrival of the car, and therefore held that the drafts were to be paid thirty days after acceptance, that the arrival of the car was of no controlling importance in that connection, and that the bank was justified in permitting acceptance in advance of such arrival. These conclusions, to which most of the reasons of appeal relate, are manifestly sound, if the construction adopted by the trial court was permissible upon the facts before it, and we hold that it was.

The original drafts and documents accompanying them (Exhibits H, I, J and K) were, upon appellant's motion, made part of the finding, and it is urged that since the bill of lading attached to each draft describes the car to which it relates, such description should be given like effect as was the designation of the car in the draft itself in the *Goodhue* case. But even if this construction were adopted and the due date of the draft held to be thirty days after arrival of the car, the only result would be to bring this case into complete coincidence, in all essential particulars, with the *Goodhue* case, the discussion (which there is no occasion to repeat here) and the decision in that case would be applicable here, and the ultimate conclusion that the cars of flour are the property of The First

National Bank of Bridgeport and the resulting judgment must stand.

There is no error.

In this opinion the other judges concurred.